# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KHARII W. BRODIE, individually
and as parent and natural guardian
Of████████████████ BB
and█████████████, SB
1801 Staley Manor Drive,
Silver Spring, MD. 20904.
Phone: 301-622-2505

**Plaintiffs**

**FILED**

SEP 2 5 2009

Clerk, U.S. District and
Bankruptcy Courts

Case: 1:09-cv-01828
Assigned To : Huvelle, Ellen S.
Assign. Date : 9/25/2009
Description: Civil Rights - Non. Employ.

v.

KATHERINE WORTHINGTON as an individual,
555 Fourth Street N.W., Washington, D.C. 20530

JONATHAN ROSEN as an individual
555 Fourth Street N.W. Washington, D.C. 20530

ELLEN SEGAL HUVELLE as an individual,
333 Constitution Avenue N.W. Washington, D. C. 20001

KAREN LECRAFT HENDERSON as individual,
333 Constitution Avenue N.W. Washington, D. C. 20001

MERRICK B. GARLAND as individual
333 Constitution Avenue N.W. Washington, D. C. 20001

JANICE ROGERS BROWN as individual
333 Constitution Avenue N.W. Washington, D. C. 20001

DAVID B. SENTELLE as an individual,
333 Constitution Avenue N.W. Washington, D. C. 20001

DOUGLAS H. GINSBURG as an individual,
333 Constitution Avenue N.W. Washington, D. C. 20001

ARTHUR RAYMOND RANDOLPH as an individual,
333 Constitution Avenue N.W. Washington, D. C. 20001

1 | Page

1   DAVID S. TATEL as an individual,                    ✓
2   333 Constitution Avenue N.W. Washington, D. C. 20001
3
4   THOMAS B. GRIFFITH as an individual,                ✓
5   333 Constitution Avenue N.W. Washington, D. C. 20001
6
7   BRETT M. KAVANAUGH as an individual,                ✓
8    333 Constitution Avenue N.W. Washington, D. C. 20001
9
10
11  ALBERTO GONZALES as an individual,                  ✓
12  950 Pennsylvania Avenue N.W. Washington, DC 20530
13
14  HARLEY LAPPIN as an individual,                     ✓
15  320 First Street, NW., Washington, DC 20534
16
17  JOHN DOE(s) as an unidentified individual employee(s) of Bureau of Prisons,
18  320 First Street, NW., Washington, DC 20534
19
20
21  BRUCE JOHNSON as an individual,                     ✓
22  4301 Northview Drive, Bowie MD 20716
23
24  BRENT JACKSON as an individual.                     ✓
25  406 West Franklin Street, Second Floor. Richmond Virginia 23220
26
27  **Defendants**

28

29  **JURY TRIAL DEMANDED**

30

31  1. This is a civil action brought to redress the violation of rights secured to the Plaintiffs under

32  federal law and the United States Constitution. See: Bivens v. Six Unknown Named Agents of

33  Federal Bureau of Narcotics, 403 U.S. 388.

34

35  **JURISDICTION**

1

2. This Court has jurisdiction over this action under the provisions of 18 U.S.C. § 3231, 28 U.S.C. § 1343, § 1331, and § 1332, because it is filed to obtain compensatory and punitive damages for the deprivation, under the color of state law, of the rights of citizens of the United States secured by the Constitution and federal law pursuant to 42 U.S.C. § 1981 ("All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is <u>enjoyed by white citizens</u>,") and §1983.

3. Venue is proper under 28 U.S.C. § 1391(e)(2) because the events giving rise to Plaintiff's claims occurred in this judicial district.

**PARTIES**

**Plaintiffs:**

4. Kharii Brodie.

5. Stephon Brodie is the son of Kharii Brodie age 12.

6. Brandon Brodie is the son of Kharii Brodie age 5.

7. All Plaintiffs are born citizens of the United States and residents of Maryland.

8. Plaintiff Kharii Brodie was deprived of his constitutional rights deep-rooted in 4th, 5th, 6th, 8th, and 14th Amendment by defendants and the deprivation of those rights also affected his young children indirectly.  Attached is sworn Affidavit by Kharii Brodie of complaint. See Exhibit "A".

9. "Decency, security and liberty alike demand that government officials shall be subjected to the rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously. Our government is the potent, omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a lawbreaker, it breeds contempt for the law, it invites every man to come a law unto himself. It invites anarchy. (United States v. Olmstead, 277 U.S. 438 (1928).

10. "When any court violates the clean and unambiguous language of the Constitution, a fraud is perpetrated and no one is bound to obey it." State v. Sutton, 63 Minn. 147 65 NW 262 30 ALR 660. Also see (Watson v. Memphis, 375 US 526; 10 L Ed 529; 83 S.Ct. 1314)

**Defendants:**

11. Katherine A. Worthington as an individual, Jonathan Rosen as an individual, Judge Ellen Segal Huvelle as an individual, Judge KAREN LECRAFT HENDERSON as individual, Judge MERRICK B. GARLAND as individual, Judge JANICE ROGERS BROWN as individual DAVID B. SENTELLE Chief Judge as an individual, Judge DOUGLAS H. GINSBURG as an individual,

1    Judge Arthur RAYMOND RANDOLPH as an individual, Judge JANICE ROGERS BROWN as

2    an individual, Judge DAVID S. TATEL as an individual, Judge THOMAS B. GRIFFITH as an

3    individual, Judge BRETT M. KAVANAUGH as an individual, Alberto Gonzales as an

4    individual, Harley Lappin as an individual, and JOHN DOE an unidentified employee of

5    Bureau of Prisons, Bruce Johnson as an individual, and Brent Jackson as an individual deprive

6    Plaintiff willfully by their unprofessional, unethical, fraudulent actions and inactions of rights

7    under the color of law in violation of Title 18, U.S.C., Section 242 and 42 U.S.C. 1983. These

8    defendants had legal and ethical duty of their official capacity in which they had to perform,

9    but chose to refrain from doing that act by stepping beyond their sovereignty knowingly and

10   willfully shown by their actions or inaction, and in so doing is held accountable jointly and

11   individually by the facts stated below:

12

13   **STATUTE**

14   18 U.S.C. Section 242 Deprivation of rights under color of law

15   12. Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully

16   subjects any person in any State, Territory, Commonwealth, Possession, or District to the

17   deprivation of any rights, privileges, or immunities secured or protected by the Constitution or

18   laws of the United States, or to different punishments, pains, or penalties, on account of such

19   person being an alien, or by reason of his color, or race, than are prescribed for the punishment

20   of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if

21   bodily injury results from the acts committed in violation of this section or if such acts include

22   the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be

1   fined under this title or imprisoned not more than ten years, or both; and if death results from

2   the acts committed in violation of this section or if such acts include kidnapping or an attempt

3   to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an

4   attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or

5   both, or may be sentenced to death.

6   **FACTS**

7   13. Plaintiff Kharii Brodie, then a resident of the State of Maryland, was charged under the

8   name of Wilbert Brodie as follows: "Count 1. From in or about November, 1995 and continuing

9   thereafter through in or about July, 1997, within the District of Columbia and elsewhere,

10  defendant BRODIE willfully and knowingly did conspire, confederate, combine, and agree with

11  Olurotimi Padonu, Sarafa Kareem, Ester Harper, Akintunde Akinmurele, D.W., G.N., and

12  other coconspirators, both known and unknown to the grand jury, to commit offenses against

13  the United States, that is:

14  a.  knowingly making false statements to financial institutions whose deposits were insured by

15  the FDIC for the purpose of influencing the financial institutions to approve mortgage loans, in

16  violations of 18 U.S.C. §§1014 and 2; and

17  b.  causing the use of wires in furtherance of a scheme to defraud and to obtain money and

18  property by means of false and fraudulent pretenses, representations, and promises, in

19  violations of 18 U.S.C. §§ 1343 and 2. Count 2; Wire fraud that occurred on April 24, 1997.

20  Count 3; Wire fraud that occurred on May 27, 1997. Count 4; Wire fraud that occurred on June

21  24, 1997. "

22

1   14. The first indictment was returned on April 23, 2002, but was sealed until April 8, 2003.

2

3   15. The government superseded the first indictment with the same charges as the first

4   indictment with the same charges as the first indictment and one additional count of

5   conspiracy that did not involve Plaintiff and added forfeiture. The indictment was returned on

6   November 13, 2003.

7

8   16. The government further superseded the second indictment with the same charges as the

9   first indictment but removed count five. Then they broadened the indictment in general by

10  including leader or organizer of criminal activity of more than five people, more than minimal

11  planning. Also, included from the second indictment, was forfeiture. The second superseding

12  indictment was returned on August 12, 2004.

13

14  17. Plaintiff Kharii Brodie pled that he was not guilty.

15

16  18. Trial started on January 10, 2005 and concluded on January 14, 2005.

17

18  19. The jury returned a verdict of guilty on all counts of the superseding indictment on January

19  18, 2005. On reading of the verdict, defendant was ordered held without bond and remained in

1   custody to serve the imposed 57 months sentence with 3 years supervised release and

2   restitution.

3

4   20. Plaintiff was released from custody on March 6, 2009 and began the 3 years imposed

5   supervised released term on March 6, 2009.

6

7

**8   Count 1: Plaintiff Deprivation of the 5th and 6th Amendment Rights By Arresting**

**9   Officers Under The Direction of United States Assistant District Attorney.**

10

11   21. Plaintiff was arrested on April 29, 2003 and questioned by agents without Miranda rights

12   stated to him.  The arresting officers never told him that he had an indictment and that it was

13   filed against him from April 23, 2002 even though he asked repeatedly why he was being

14   arrested.  Plaintiff never was shown any warrant or anything at the time of his arrest until after

15   questioning. The officers under the directions of the United States Assistant District Attorney

16   deprived Plaintiff of his 5th Amendment rights and 6th Amendment rights. This was not a

17   simply issue of arresting and not informing of the Miranda rights but it gets more serious when

18   an indictment is already in place against the Plaintiff and he is questioned by officers outside

19   the court without the right to an attorney.

**Count 2: Judge Ellen Huvelle Knowingly and Willfully Caused The Deprivation of Plaintiff 4th, 5th, 6th, 8th, 14th Amendment Constitutional Rights by her Action and Inaction.**

22. Plaintiff filed a timely motion 28 U.S.C § 2255 to vacate, set aside, or correct sentence by a person in federal custody on April 9, 2009 but in his belief it was willfully not docketed on that date. Plaintiff also submitted Record material for Movant in accordance with D.C. Circuit Rule 24 (b) to support his arguments with evidence on April 9, 2009.

23. Plaintiff inquired at the clerk of court on May 28, 2009 at 2:30 p.m. concerning getting a copy of the docket to make sure the motion was docketed but was told it could not be found.

24. Plaintiff appeared in person at the clerk of court office on May 28, 2009 at around 3:50 p.m. and received documentation from Tiffany N. Reed Criminal Case Administrator that the § 2255 motion had been found in Judge Ellen Huvelle chambers.

25. Plaintiff received notice on or around June 4, 2009 in the mail that the motion § 2255 was filed into docket on May 29, 2009.

1   26. Plaintiff received a copy of Judge Ellen Huvelle Memorandum filed June 22, 2009 stating

2   that Plaintiff motion was denied.

3

4   27. From the preliminary hearings, to trial, to motion § 2255 Judge Huvelle has been

5   continually been unfair, illegal, improper, unconstitutional, exhibited a depraved indifference

6   to the welfare and constitutional rights of the Plaintiff.

7

8   28. Plaintiff had requested on or around June 2, 2004 that Plaintiff lawyer Steven Carl

9   Tabackman (*lawyer supplied by Judge Ellen Huvelle*) filed a motion to dismiss, stating that

10  the mortgage companies that Plaintiff applied to were not FDIC institutions. Motion to Dismiss

11  was docketed June 10, 2004. Plaintiff had never seen that motion and is unable to find a copy

12  of that motion to view the integrity of the contents to date.

13

14  29. Plaintiff Motion to Dismiss was denied on or around July 19, 2004 even though Judge

15  Huvelle stated in the denial that "the government has yet to produce the evidence." The

16  indictment was conceived from April 23, 2002 and here it were over two years later on July 19,

17  2004 and Judge Huvelle still denied the motion to dismiss without an evidentiary hearing on

18  Plaintiff challenge of the jurisdictional element. In fact, it would have been cost effective at that

19  point and on everyone part to see if it was beneficial to continue the case but she chose to be

20  defiant and reckless. It is a fundamental duty of a judge to know of the 5th, 6th, 14th Amendment

21  rights which refers to the right of due process clause, fair trial and equal protection of the law.

22  Denial of the motion to dismiss without an evidentiary hearing caused in trial; unfair

1    prejudiced, confusion of the issues, <u>mislead the jury</u>, denied the right to a fair trial, and the

2    right to due process and equal protection of the law.

3

4    30. An evidentiary hearing was important and proper to have based of Plaintiff charge of

5    "<u>knowingly and willfully</u>" making false statement to institutions that is FDIC insured. The fact

6    of the element of "<u>knowingly and willfully</u>" gives importance as to at what point the

7    jurisdictional element is important. In this charge, jurisdiction starts at the beginning of the

8    road and not at the end. Plaintiff only action that cause him any liability was his signature on

9    the loan application. Other than Plaintiff signing the loan application there is no other cause of

10   action could be brought by the government to Plaintiff. The beginning of the road is Plaintiff

11   loan application and the company name that is printed on the loan application.

12

13   31. Plaintiff was a borrower who applied to Allstate Funding Corporation on November 11,

14   1995. Loan officer was Pandonu on loan application. See Government exhibit No. Sale 36th -2-

15   LN-11 & 7.

16

17   32. Plaintiff was a borrower who applied to Allstate Funding Corporation on April 17, 1996.

18   Loan officer was Pandonu on loan application. See Government exhibit No. Sale 15th -2-LN-43.

19

1   33. Plaintiff was a borrower who applied to Allstate Funding Corporation on September 17,

2   1996. Loan officer was Pandonu on loan application. See Government exhibit No. Sale 15th -3-

3   LN-70.

4

5   34. Plaintiff was a borrower who applied to Allstate Funding Corporation on October 24, 1996.

6   Loan officer was Pandonu on loan application. See Government exhibit No. Sale 15th -3-LN-74.

7

8   35. Plaintiff was a borrower who applied to Federal Home Funding on February 3, 1997. Loan

9   officer was Tayo Kareem on loan application. See Government exhibit No. Sale 7th -2-LN-206

10  (Borrower loan application has the name of company involved in Count 2.).

11

12  36. Plaintiff was a borrower who applied to Federal Home Funding on June 9, 1997. Loan

13  officer was Tayo Kareem on loan application. See Government exhibit No. Sale 26 Bates -2-LN-

14  243 (Borrower loan application has the name of company involved in count 3.).

15

16  37. Plaintiff was a borrower who applied to Federal Home Funding on July 11, 1997. Loan

17  officer was Tayo Kareem on loan application. See Government exhibit No. Sale 5th -2-LN-276

18  (Borrower loan application has the name of company involved in count 4).

19

1   38. Plaintiff judgment of the court Case CR 02-190-1 states 18 U.S.C 371 and 2 Conspiracy and

2   Causing to be done; Aiding and Abetting; Count 1. November 1995 through July, 1997. 18

3   U.S.C. 1343; wire fraud count 2, 3, and 4 November 1995 through 1997. Mysteriously § 1014

4   was omitted from the judgment outside of the court records.

5

6   39. Plaintiff Superseding Indictment dated August 12, 2004 stated in the overt act that the

7   lender on count 2 was Weyerhaeuser Mortgage Company.

8

9   40. Plaintiff Superseding Indictment dated August 12, 2004 stated in the overt act that the

10  lender on count 3 was Weyerhaeuser Mortgage Company.

11

12  41. Plaintiff Superseding Indictment dated August 12, 2004 stated in the overt act that the

13  lender on count 4 was Weyerhaeuser Mortgage Company.

14

15  42. 18 USCA § 982, Criminal forfeiture does not support forfeiture for lenders that are not

16  within the violation §1014 or conspiracy to wire fraud therefore the government employees

17  collecting for uninsured companies as if they are insured companies is extortion and they have

18  gone beyond knowingly and willfully of what the federal law allow of them. See Exhibit C –

19  indictment. See Indictment.

20

1   43. At sentencing on August 4th, 2005 Plaintiff brought to the attention of Judge Ellen Huvelle

2   that the mortgage companies he applied were not FDIC insured and when she denied his

3   motion to dismiss it was stated that it was done without prejudice. She claimed that she already

4   made her decision. Plaintiff told her that her decision stated that the government had yet to

5   produce the evidence and she had denied it without prejudice. Therefore the denial was

6   contingent but not absolute. Plaintiff was asking for an absolute decision at sentencing based

7   on his motion to dismiss and her prior decision but instead she stated she already made her

8   decision. Her action deprived Plaintiff of the fundamental right to equal protection under the

9   law, due process and the right to a fair trial by once again not asking the government to

10   produce the evidence and to <u>simply compare</u> the name of the alleged FDIC certified lenders

11   with the lenders named on his loan applications. Judge Ellen Huvelle actions and inactions

12   were malicious and calculative because she did not want to publicly go on record that she knew

13   that the name of mortgage companies on Plaintiff loan applications were not covered under

14   FDIC status in order to later if found out to try and claim immunity. From the court transcripts

15   one can infer that when Plaintiff asked that question she became elusive rather than act

16   equitable.

17

18   44. Plaintiff filed motion § 2255 on April 9, 2009 that stated the institutions that he applied for

19   loans were not under the jurisdiction of FDIC. Plaintiff supplied to Judge Huvelle

20   documentation from Fredrick L. Fish Supervisory Counsel of FDIC that went into detail

21   concerning companies that FDIC insures. Mr. Fish listed that Allstate Funding and Federal

22   Home Funding were not FDIC. Those companies are the names on the loan applications of

23   Plaintiff. Also, Weyerhaeuser Corporation, Quality Mortgage USA, National Mortgage

1   Corporation, Fidelity Mortgage Decision Corp, and Standard Mortgage Corporation of Georgia

2   are all "not" FDIC insured. Exhibit App. 01 FDIC was submitted and enclosed in Motion §2255

3   Record Material of Movant to the court. Again the opportunity to correct the wrong was given

4   to Judge Huvelle and again she refused to correct it. See exhibit App. 01 FDIC.

5

6   45. Plaintiff received a copy of the Memorandum Opinion from the court filed into docket June

7   22, 2009 which denied Plaintiff motion § 2255. The court claimed that "Plaintiff jurisdictional

8   issue concerning institutions being FDIC was not an issue because the D.C. Circuit rejected the

9   claim, noting that the government had "introduced affidavits from the FDIC's Assistance

10  Executive Secretary certifying that the lenders are FDIC-insured." "The court goes on to say

11  that the government neither alleged nor was it required to prove that every defrauded lender

12  was FDIC-insured." The indictment charged Plaintiff with "knowingly and willingly" making

13  false statements to FDIC institutions. When the government listed lenders in Plaintiff's

14  indictment, the indictment is alleging that all the listed lenders are FDIC insured. Further,

15  when all the lenders listed in indictment are used as evidence they are used to prove that false

16  statements were made to FDIC insured institutions and to forfeit money in the name of FDIC

17  insured status (in opposition to Federal Rule Of Evidence 403) which is reflected in the court

18  judgment filed August 10, 2005. The judge knew that in a criminal court a person is to be

19  proven beyond a reasonable doubt of every element of the crime, therefore if Plaintiff is going

20  to be found guilty on each count of wire fraud that involved the fact that each one is supposed

21  to be FDIC insured it is only logical that each count must be proven separately. Again this

22  judge has consistently knowingly and willingly deprived Plaintiff of his 6th and 14th Amendment

23  rights.

1

2   46. Plaintiff filed a motion § 2255 stating that Bruce Johnson supplied ineffective counsel, with

3   factual reasons on April 9, 2009. Also, in same motion § 2255 Plaintiff stated that Brent

4   Jackson supplied ineffective counsel with factual reasons on April 9, 2009. Plaintiff hired Brent

5   Jackson to file a motion of acquittal within the legal grace period. On January 24, 2005 the

6   amount of Five Thousand Dollars ($5,000.00) was wired to Brent Jackson via Western Union

7   from Yvonne Coley as partial payment to retain him as Plaintiff lawyer to put in a motion of

8   acquittal and to further investigate the ineffectiveness of Bruce Johnson. In the decision from

9   the Motion § 2255, Judge Huvelle defended the lawyer actions and inaction and say they were

10  not ineffective. This action and inaction by the judge when a blind man could see clearly the

11  ineffectiveness of the lawyers was a willful deprivation of Plaintiff 6th Amendment rights.

12

13  47. "When a judge acts intentionally and knowingly to deprive a person of his constitutional

14  rights, he exercises no discretion or individual judgment; he acts no longer as a judge, but as a

15  "minister" of his own prejudice." Pierson v. Ray. 386 U.S. 547 at 567 (1967)

16

17  48. "We should, of course, not protect a member of the judiciary "who is in fact guilty of using

18  his power to vent his spleen upon others, or for any other personal motive not connected with

19  the public good." Gregoire v. Biddle, 177 F.2d 579, 581.

20

1   49. "Government immunity violates the common law maxim that everyone shall have remedy

2   for an injury done to his person or property." Fireman's Ins. Co. of Newark, N.J. v. Washburn

3   County, 2 Wis.2d 214, 85 N.W.2d 840 (1957) Immunity fosters neglect and breeds

4   irresponsibility, while liability promotes care and caution, which caution and care is owed by

5   the government to its people." Rabon v. Rowen Memorial Hosp., Inc. 269 NSI. 13, 152 S.E.2d

6   485, 493 (`1967)

7

8   50. Mr. Rosen (United States Assistant Attorney) closing arguments were given after the jury

9   instructions instead of the normal procedure of court process whereby the jury instruction is

10   given after all closing arguments. This in Plaintiff belief was done to confuse the jury because

11   Mr. Rosen was able to go last and able to present his distorted interpretation of events and

12   make it seem they were an extension of the jury instruction. This action is another example of

13   deprivation of the right to a fair trial and the ethics of due process.

14

15   51. The government exhibit list omitted Kareem plea offer, statement of offense, and Kareem

16   superseding information on January 11, 2005.  The government exhibit list also omitted

17   Padonu plea offer and statement of offenses on January 11, 2005. The government exhibit list

18   omitted Akinmurele plea offer and information on January 11, 2005. Their plea offer is

19   inconsistent with the charges in Plaintiff indictment. It is Plaintiff belief that they found it out

20   and immediately omitted it from the exhibit list. Judge Huvelle on January 10, 2005 approved

21   a motion submitted by Mr. Rosen entitled "Motion in Limine To Introduce Self-Authenticating

22   Documents" without anyone to lay the grounds for that motion. By that motion Plaintiff was

1    denied the right to face any accusers and to question them. Judge Huvelle in collusion with Mr.

2    Rosen deprived Plaintiff the right to equal protection of the law and the right to a fair trial.

3

4    52. On or about January 14, 2005 the jury verdict form did not allow jurors to unanimously

5    agree where federal fraud charges occurred or against which federal institution fraud occurred.

6    The indictment was a violation of the 6th Amendment because it did not properly inform

7    Plaintiff of what to prepare for in defense. Tony Axom who was Plaintiff lawyer in the

8    beginning filed for Bill of Particulars because the indictment was vague and Judge Huvelle

9    denied it. The indictment alleged several lenders that were not related to each other, and did

10   not layout by "count" where fraud took place so that fraud could be accounted properly. And

11   permit Plaintiff to be found beyond a reasonable doubt in violation of the federal statutes they

12   set forth. In the same way they distorted the overt act, they alleged that Plaintiff was not a

13   citizen and made it to be overwhelming evidence for jury to render a guilty verdict. Since

14   Plaintiff is a born citizen there is no way one can determine what the jury considered without a

15   "count" to show what was considered. In their indictment design they also made the property

16   address the focus point instead of the institutions which by doing so they were able to deceive

17   the jury by confusion. It also made it seem that one FDIC institution would be responsible for

18   all the properties. The indictment was drafted to be vague and deceptive and in so doing

19   deprived Plaintiff of his 6th and 14th Amendment rights.

20

21   53. Judge Ellen Huvelle imposed excessive appeal bond on Plaintiff when in fact if he was given

22   an appeal bond as Senator Ted Stevens he could have gotten a hold of the evidence that was

1  withheld from him that he now has in order to demonstrate that he should have been acquitted

2  after the government rested it case. Judge Huvelle deprived Plaintiff of his 8th Amendment

3  rights.

4

5  **Count 3: The Superseding Indictment Was Not Signed By A Foreperson As A True**

6  **Bill And Still Was Used To Convict Plaintiff Which Is A Direct Deprivation Of The**

7  **4th and 6th Amendment Rights.**

8

9  54. The superseding indictment that they used to convict Plaintiff in court was invalid because

10 it was not supported by Oat or affirmation which is a direct violation to the 4th Amendment.

11 Mr. Rosen brought it to Judge Huvelle attention but she said nothing but continued with the

12 court proceeding. Mr. Rosen knew that it was improper that is why he disclosed it to Judge

13 Huvelle and she should have known the fundamental of the law but did not exercise due care.

14 It is understood why someone would not want to attest to the indictment. The prior

15 indictments were vague, but this superseding indictment was particular more vague to were it

16 bridged on nonsense. The indictment is a prime example of the defendant's kangaroo efforts.

17

18 **Count 4: Prosecutorial Misconduct caused a deprivation of constitutional rights**

19 **guaranteed by 6th and 5th Amendment.**

20

1    55. On March 26th 2002 Linna Mohler and Katherine Worthington presented testimony to the

2    grand jury omitting that Plaintiff knowingly applied to Allstate Funding for a mortgage which

3    was an uninsured institution. They omitted to grand jury that Esther Stroy Harper did

4    appraisals only for Allstate Funding, Federal Home Funding, GSF Mortgage and not any FDIC

5    insured institutions. There were no appraisals made by Esther Harper to any bank or FDIC

6    insured institutions as shown in motion § 2255 Record Material For Movant filed on April 9,

7    2008. As individuals who are employees of the United States they went beyond their

8    jurisdiction in trying to get an indictment. By not presenting the truth to the grand jury they

9    have not presented credible information and essential elements of the alleged crime for the

10   grand jury to make an informed decision. This was deprivation Plaintiff 6th Amendment rights.

11

12   56. Plaintiff indictment returned on August 12, 2004 stated Brodie, Padonu, Kareem, and

13   Harper were in a conspiracy to knowingly and willingly make false statements to FDIC

14   institutions and wire fraud. But the alleged overt acts stated in the indictment, is inconsistent

15   with the charges. The indictment stated Kareem was the loan officer for Federal Home Funding

16   on various loan applications involving Brodie. Padonu was a loan officer for Allstate Funding

17   on loan applications involving Brodie. The indictment did "not" allege that Padonu assisted

18   Kareem or that they both worked on the same loans. The FBI report investigated on November

19   27, 2001 File 29B-WF-210993 SUB S-3 stated that on page 3 at paragraph 3 that, "Stroy (an

20   appraiser the government used as their only, and key witness) has never seen them with

21   BRODIE." Also, in the same report there is no evidence that Stroy made any appraisals for

22   banks or FDIC institutions. The FBI report only stated the name of the companies she did the

23   appraisals which were uninsured lenders named Allstate Funding, Federal Home Funding, and

1   GSF Mortgage. Yet Katherine Worthington and Linna Mohler stated to the grand jury that they

2   were in the same conspiracy to make false statements to institutions that are FDIC insured and

3   wire fraud. Mr. Rosen then uses only Stroy to establish their conspiracy theory at trial. Such

4   actions were a direct deprivation of Plaintiff 6th Amendment rights.

5

6   57. On January 12, 2005 on or around 10:00 a.m., Esther Story Harper testified that she was in

7   conspiracy with Plaintiff but gave no testimony of any FDIC institution that she knew was

8   FDIC insured. The government could not supply any evidence of how Harper willingly and

9   knowingly connected to any FDIC institution. Mr. Rosen (an employee of the United States)

10  had her state to the jury that she was in a conspiracy with Plaintiff when he knew of the FBI

11  report File # 29B-WF-210993 SUB S-3 showing that Harper did not know of any FDIC

12  institution.   Mr. Rosen knew she testified that she met Plaintiff in August 1996 and their

13  indictment allegation started in 1995. Such actions and inaction deprived Plaintiff of 6th

14  Amendment rights. Her plea agreement stated her action started from 1996 in direct

15  contradiction. Mr. Rosen had Harper perjury herself by stating she was a part of the conspiracy

16  to knowingly make false statements to FDIC institutions, wire fraud and she did all the

17  appraisals from 1995.

18

19  58. The United States District Attorney's Office has been cited for violations involving

20  prosecutorial misconduct in the past.

21

1    59. Most recently in the case of Senator Ted Edwards, "Instead of appropriate compliance, the

2    prosecution provided only limited documents to the court and no copies of any documents to

3    the defense. In that instance, Judge Black of the U.S. District Court refused to accept the claims

4    by the prosecutor that this was harmless error. Without proper notification, it was impossible

5    for the defense to properly prepare for the arguments in court, putting the prosecution in

6    stronger position to push for conviction without any concern for the rights of the defendant."

7

8    60. Linna Marie Mohler on April 23, 2002 along with Katherine A. Worthington misled the

9    Grand Jury by stating continuously through the Grand Jury hearing that Plaintiff made false

10   statement on his loan applications that he was a citizen when he was not. In Plaintiff

11   Presentence Sentence Investigation Report on around March 7, 2005 stated that Plaintiff was

12   stated as a United States citizen.

13

14   **Count 5: Malpractice By defendant(s) Caused Plaintiff The Deprivation 4th, 5th,**

15   **6th, 8th and 14th Amendment.**

16

17   61. On information and Plaintiff belief Bruce Johnson was working in conjunction with

18   Jonathan Rosen to compromise the effectiveness of counsel which is guaranteed under the

19   constitution. Plaintiff paid Bruce Johnson an unexpected visit at his office on or around

20   December 16, 2004, because Bruce Johnson was continually avoiding him.  At that time Bruce

21   Johnson stated to Plaintiff, "Don't you see no one is listening, it is real it is real." From this it

22   Plaintiff belief that the case was fixed and he would not get a fair trial, and Bruce Johnson

1   knew of it. Bruce Johnson committed several acts of legal malpractice based on his actions and

2   inactions. It is also Plaintiff belief defendants premeditated going beyond their official capacity

3   to deprive Plaintiff of his 6th Amendment rights.

4

5   62. Plaintiff counsel Bruce Johnson entirely fails to subject the prosecution's case to

6   meaningful adversarial testing and by so doing caused a deprivation of the 6th Amendment

7   rights that made adversary process itself presumptively unreliable.

8   a). Bruce Johnson did not follow up on Plaintiff Motion to Dismiss and demanded an

9   evidentiary hearing.

10  b). Bruce Johnson did not ask for acquittal after the government rested their case without

11  testimony of the loan officers as to Plaintiff actions and knowledge in their loan process and the

12  omission of the loan officers plea agreement from the government exhibit list.

13  c). Bruce Johnson did not invoke rule of evidence 403 in order to show the importance of the

14  evidentiary hearing and to prevent unfair prejudiced, confusion of the issues, misleading the

15  jury, denial of the right to a fair trial, and the right to due process and equal protection of the

16  law by the government using non FDIC institution to make their case for violation of FDIC

17  insured institutions.

18  d). Bruce Johnson signed stipulating that all lenders were FDIC without Plaintiff approval

19  when they were not.

20  e). Bruce Johnson did not challenge the Plaintiff invalid indictment and allowed Plaintiff to be

21  imprisoned in violation of the 4th, 6th, 8th, and 14th Amendment.

f). Bruce Johnson did not challenge the government's style as "Motion in Limine to Introduce Self-Authenticating Documents" pursuant to rule 902(11) of the rule of evidence even though no one was present to lay the foundation for the admission. In so doing the government claims that Plaintiff wavier his right to face his accusers and the government and Bruce Johnson deprived Plaintiff in facing his accusers. Bruce Johnson can not claim this action and inaction of his was a strategy because he did not ask for acquittal after the government rested their case.

g). Bruce Johnson did not challenge the forfeiture charge and in so doing allow the government to collect for non FDIC institutions by falsely using U.S.C 982(a)(2)(A) as a justifiable means to collect under that law.

h). Bruce Johnson did not challenge the government alleged conspiracy charge as to who the co-conspirator are and their roles that they played knowingly of a federal unlawful act.

i). Bruce Johnson did not challenge the government to show how Kareem and Esther Harper knowingly and willfully was involved in a federal unlawful act pertaining Plaintiff case other than the government simply saying they were.

j). Bruce Johnson with held evidence from Plaintiff pertaining to the content that was given to him on a disk by Jonathan Rosen. The disk had evidence than was harmful to the prosecution case but Bruce Johnson did not bring it to Plaintiff attention or reviewed it with him.

63. Plaintiff counsel Charles Tabackman entirely fails to subject the prosecution's case to meaningful adversarial testing and by so doing caused a deprivation of the 6th Amendment rights that made adversary process itself presumptively unreliable.

1  a). Charles Tabackman after Judge Ellen Huvelle had employed him to represent Plaintiff,

2  informed the court that the court should accept any motion by Plaintiff's co-defendants as a

3  motion that came from Plaintiff. Charles Tabackman did this without knowing a head of time

4  of what the co-defendant motion would contain. In so doing Judge Ellen Huvelle in her

5  rebuttal to Plaintiff § 2255 motion now used that motion to claim that Plaintiff stated that he

6  was not a citizen because the other co-defendants claimed they were not citizens and seek relief

7  under Vienna Convention Treaty. Charles Tabackman action and inaction was reckless and

8  totally incompetent. Plaintiff believed that such action was willfully done to aid the

9  prosecution.

10  b). Plaintiff had to send Charles Tabackman a letter that advise him that if he did not put in a

11  motion challenging the jurisdiction with a motion to dismiss Plaintiff would used a copy of the

12  letter to him as Plaintiff motion to the court. See exhibit "D".

13

14  64. Plaintiff counsel Brent Jackson entirely fails to subject the prosecution's case to meaningful

15  adversarial testing and by so doing caused a deprivation of the 6th Amendment rights that

16  made adversary process itself presumptively unreliable.

17  a). Immediately after Plaintiff's verdict, Plaintiff sister wired $5,000.00 on January 24th 2005

18  to retain Brent Jackson to submit a motion of acquittal within the allotted time. He did not do

19  as required.

20  b). On or around January 31, 2005 Brent Jackson sent a letter of engagement outlining what

21  should be expected or involved of his services in regard to case of United States v. Wilbert

22  Brodie. See exhibit "E".

1   c). Plaintiff on numerous occasions had asked Brent Jackson to file to the court a motion

2   addressing the jurisdictional element but he did not do so.

3   d). Plaintiff composed a draft of a motion that Plaintiff asked Brent Jackson to put in to the

4   court since Plaintiff was not doing what he requested. Instead of putting the idea of Plaintiff

5   request in a formal way and submitting it to the court he sent a feisty letter to Plaintiff stating

6   he was not going to file the motion. Plaintiff received the letter on or around May 23, 2005.

7   f). On February 18, 2005 Brent Jackson was wired $6,001.00. On February 24, 2005 Brent

8   Jackson was wired $3,500.00. Brent Jackson told plaintiff that he needed transcripts of the

9   trial so that he could review it with Plaintiff. Brent Jackson was paid $5,000.00 to get trial

10  transcript to subject the prosecution's case to meaningful adversarial testing but never showed

11  or reviewed it with plaintiff. In fact, Plaintiff asked for a copy after sentencing and he sent

12  copies that had no pages numbers no line numbers. Brent Jackson received a total of Twenty

13  Six Thousand Dollars ($26,000.00).

14  e). Plaintiff requested from Brent Jackson on or around March 9th 2009 Plaintiff court file that

15  he has in his position to date. He has not complied with Plaintiff request to date and had

16  created a great obstacle for Plaintiff to get the required knowledge of the facts to demonstrate

17  the wrong doing by the government employees.

18

19  **Count 6: Judge Henderson, Judge Brown and Judge Harlan knowingly and**

20  **willfully deprived Plaintiff of his 6th and 14th Amendment Constitutional Rights.**

21

1   65. Plaintiff filed to the United States Court of Appeals on December 20, 2006 an argument

2   stating that the indictment was defective. Copies of the defective indictment argument were

3   also delivered on or around December 20, 2006 to the United States Attorney office.

4   Mysteriously both United States Attorney and Appellate Court did not address or acknowledge

5   the argument even though it was docketed into the court docket 05-3131 on December 26,

6   2006. The Defective argument was sent a second time to both the United States Attorney and

7   the Appellate Court with the clerk of court date stamp on it in "red ink" and filed into the court

8   docket 05-3131 on September 14, 2007 before the appellate court made their decision and still

9   mysteriously both separate offices did not acknowledged it.

10

11   66. Plaintiff appealed to the United States Court of Appeals on several grounds one of those

12   essential grounds were the jurisdictional issue. The Court of Appeals affirmed the judgment of

13   the district court May 6, 2008. The Court of Appeals stated in the decision of May 6, 2008 that

14   "The Government, however, introduced affidavits from the FDIC's Assistant Executive

15   Secretary certifying that the "lenders" are FDIC-insured." Lenders in this context when there

16   are nine lenders very well meant all nine which was a false claim.

17

18   67. The court record stated that On May 26, 2004 Valerie J. Best attested that as the Assistant

19   Executive Secretary of the Federal Deposit Insurance Corporation that she certified that First

20   Keystone Federal Savings Bank had FDIC insured status; she did not say the "lenders" were

21   FDIC. She was specific see Government Exhibit No. Misc-FDIC-552, there is no evidence of

1   Plaintiff connected to any wire transmission of this bank or any charge that wire fraud affected

2   this institution.

3

4   68. The court record stated that May 26, 2004 Valerie J. Best attested that as the Assistant

5   Executive Secretary of the Federal Deposit Insurance Corporation that she certified that Union

6   Federal Bank of Indianapolis had FDIC insured status; she did not say the "lenders" were

7   FDIC. She was specific see Government Exhibit No. Misc-FDIC-547, there is no evidence of

8   Plaintiff connected to any wire transmission of this bank or any charge that wire fraud affected

9   this institution.

10

11  69. The court record stated that Valerie J. Best attested that as the Assistant Executive

12  Secretary of the Federal Deposit Insurance Corporation that she certified that First Keystone

13  Federal Savings Bank had FDIC insured status; she did not say the "lenders" were FDIC. She

14  was specific see Government Exhibit No. Misc-FDIC-552, there is no evidence of Plaintiff

15  connected to any wire transmission of this bank or any charge that wire fraud affected this

16  institution.

17

18  70. Plaintiff filed an appeal styled as "Amendment to Appellant's Pro-Se Supplemental Brief"

19  stating on page 16 statute of limitation for wire fraud charges that did not involve any FDIC

20  institutions.  The employees of the appeal court falsely upheld the charges claiming that three

21  counts of the alleged wire fraud affected Weyerhaeuser Mortgage Company which they alleged

22  were FDIC insured institutions. 18 USC 20 defines what is considered a financial institution. It

1    is Plaintiff belief that the defendants was careful not to name any lenders in the appellate

2    decision that Plaintiff applied to because if they did the appellate court would have to dismiss

3    the government case. They willfully and knowingly deprive Plaintiff of his 6th and 14th

4    Amendment rights by their action and inaction.

5

6    71. Plaintiff filed into court docket 05-3131 a brief styled as "Amendment to Appellant's Pro Se

7    Supplemental Brief" on June 26, 2006 an argument addressing aiding and abetting. Both the

8    United States Attorney and Appellate Court did not address it when it goes to the heart of the

9    case. Employees within the appellate court knowingly deprived Plaintiff from due process of

10   the law and of equal protection of the law.

11

12   **Count 7: Defendant(s) actions caused Libel.**

13

14   72. Plaintiff re-alleged 1-97. Defendants caused the published decision of the Appellate Court's

15   in 524 F.3d at 273-74 stated that Plaintiff was not a United States citizen and that all lenders

16   listed in Plaintiff's indictment were FDIC insured which those claims are materially false.

17   Further, employees of the appeal court falsely published that Plaintiff faxed title request search

18   request from the District to settlement companies in Maryland and gave the impression that he

19   faxed fraudulent documents over the fax to affect three lenders who they did not name in their

20   written decision but the company(s) they are referring to are factually named as

21   "Weyerhaeuser Mortgage Company" in their indictment. They falsely claimed that that

22   company had deposits that were insured by Federal Deposit Insurance Corporation.

1

73. The published article was maliciously and willfully inserted in the law book 524 F.3d at 273-74 and the internet which caused a number of publishing companies to print their decision by the defendant, and that it was willfully and maliciously circulated and distributed by them, for the purpose of defaming, injuring, vilifying the Plaintiff character and to expose him to public hatred, contempt, and ridicule, and to deprive him of the benefits of social intercourse.

**Count 8: Deprivation of Plaintiff Constitutional Rights by Defendants Are Supported With Their Own Action and Inaction of Fraudulent Intent to Plaintiff.**

74. The court judgment in Plaintiff case shows the defect in the defendant's action and inactions which caused Plaintiff a wrongful conviction.

A). The Court Judgment only states conspiracy to wire fraud.

B). Conspiracy requires an unlawful federal act or to defraud the United States.

C). Conspiracy to wire fraud either means two or more people plan, agreed to send a wire that was used to send fraudulent documents or they used wire to defraud the United States.

D). If the wire was merely used to send fraudulent document then the unlawful federal act would be under interstate commerce making the use of the wire a fraudulent act.

E). If the wire was used to defraud the United States the document that transmitted over the wire does not have to be fraudulent as long as the wire was used to influence the action of a federal agency by fraudulent intent.

F). In Plaintiff case the government own indictment did not implicate Plaintiff that he sent any fraudulent document over the fax or any fraudulent documents were sent over fax by anyone.

G). The Government Indictment does not identify any federal agency that the wire(s) was intended to influence.

H). The Government Indictment charged Plaintiff with Aiding & Abetting but did not identify someone other than the Plaintiff who is charged with the crime and who Plaintiff assisted. This fact is outlandishly compounded by the fact that the government claimed that Plaintiff is leader or organizer of criminal activity. At the same time Pandonu plea agreement that was omitted from government exhibits on the second day of trial stated that Pandonu was the leader or organizer.

I). The government plea agreement with Kareem the loan officer named in the overt act of the alleged wire fraud count does not state he violated any federal charges pertaining to Plaintiff. Without that the government case against Plaintiff is outlandish and wrong. It is reasonable to belief that is another reason they removed Kareem plea agreement on the first day of testimony from the government exhibit list.

J). The Government key witness was Ester Story Harper an appraiser; her appraisals or her testimony does not show any knowingly connection to any federal agency or to any wire used to influence any federal agency.

1   K). The Government Judgment claims forfeiture for conspiracy to wire fraud but as shown

2   previously there is no evidence pertaining to the counts of unlawful federal acts that any

3   federal agency was connected or had any immediate connection of the wire fraud charges.

4   L). Where there is no claim warranted and the defendants through their authority authorized

5   subordinates (probation officer) to collect money is a violation of federal law under 18 U.S.C. §

6   872.

7

8   75. Defendant(s) as learned professionals knew or should have known that they were depriving

9   Plaintiff of his basic constitutional rights guaranteed by the 4th, 5th, 6th, 8th and 14th

10   Amendment without due care. Understanding of Constitutional law is a basic requirement of

11   judges. For instance, Ellen Huvelle taught trial practice at Harvard Law School's Trial

12   Advocacy Workshop and at the University of Virginia School of Law.

13

14   **Count 9: Unethical Relationship By Members Of The Lower and Higher Court**

15   **That Caused Decisions Of The Higher Court To Be Compromised And Unfair.**

16

17   76). Defendants joining in unity by an organization can compromise their actions and or

18   decisions of their post because of such relationship or bond of each other. Professional code of

19   ethics would dictate that when someone who has a role to decide fairness and that person has a

20   relationship to one of the parties or belong to the same private organization it is only ethical

21   that that someone should disclose any relationship they have with all of the parties in dispute

1    prior to their resolve. This ethical pro active action of a professional is required to ensure

2    public confidence of fairness.  In Plaintiff case it is inferred that fairness was compromised by

3    the actions and inactions of defendants that belong to the same organization. This was

4    achieved by under current of their power of unity to directly or indirectly influence others to

5    distort an outcome that affected Plaintiff. The appeal process was designed to correct flaws in

6    the due process of a trial by weighing issues in dispute fairly in accordance to equal protection

7    of the law (14th Amendment). In Plaintiff case defendant(s) choose to use favoritism of

8    collogue(s) rather than prudent investigation of the issues in dispute to be their deciding factor.

9    Based on their decided choice they have breached their official capacity role and had made

10   their decision based as individuals of their own personal agenda which is not what the

11   Constitution Law protects in their official capacity.

12

13   77. Plaintiff hereby re-allege paragraph 1-76 in reference to the cause and effect of defendants

14   action and inaction to deprive Plaintiff of his constitutional rights.

15   a). Judge Ellen Segal Huvelle is a member of the Edward Bennett Williams Inn of Court.

16   b). Chief Judge Sentelle serves as President of the Edward Bennett Williams Inn of The

17   American Inns of Court.

18   c). Jonathan N. Rosen admitted to the Edward Bennett Williams American Inn of Court in less

19   than a year after Plaintiff conviction.

20

1    78. The Edward Bennett Williams American Inn of Court is an invitation-only professional

2    organization that has distinction of being one of only a few Inns of Court specializing in white

3    collar criminal prosecution and defense. Its membership includes D.C. Circuit Court Judges,

4    District Court Judges, Superior Court Judges, DOJ Officials and some of the most established

5    defense attorneys in town.

6

7    79. Plaintiff filed a motion en banc and was docketed May 19, 2008. The motion asked the

8    higher court to review all filings which also asked to address the defective indictment argument

9    but was denied without a vote and without an opinion on June 26, 2008. The motion was

10   brought before Judge Sentelle, Judge Ginsburg, Judge Henderson, Judge Randolph, Judge

11   Rogers, Judge Tatel, Judge Garland, Judge Brown, Judge Griffith and Judge Kavanaugh.

12

13   80. Edward Bennett Williams a defense attorney created the organization. "Williams

14   represented some of the most colorful and controversial figures of the mid to late twentieth

15   century. His clients included singer Frank Sinatra, fugitive financier Robert Vesco, Soviet spy

16   Igor Melekh, Teamsters boss Jimmy Hoffa, reputed Mafioso Frank Costello, U.S. Senator

17   Joseph McCarthy, and the Reverend Sun-Young Moon, founder of the Unification Church.

18   According to biographer Evan Thomas, author of *The Man to See: Edward Bennett Williams -*

19   *Legendary Trial Lawyer, Ultimate Insider,* Williams wasn't content to be just a great lawyer:

20   "He wanted power, and he wanted to be seen as a force for larger ends than the narrow

21   representation of his clients. He was, at least in the beginning, an effective crusader for

22   individual freedom."" Quoted from Answers.com.

1

**Count 10: The Bureau Of Prisons Has A Common Practice of Depriving Constitutional Rights of Inmates Based Solely On Their National Origin In Violation Of The 5th, 6th, and 14th Amendment.**

5

6  81. Federal employees may become personally liable for constitutional deprivation by direct participation, failure to remedy wrongs after learning about it, creation of a policy or custom under which constitutional practices occur or gross negligence in managing subordinates who cause violations. (*Gallegos v. Haggerty*, Northern District of New York, 689 F.Supp. 93)

10

11  82. On or about November 25, 2005 Plaintiff was designated by Bureau of Prisons and arrived at CCA CI McRae, Georgia. Unidentified employees of the bureau of prisons designated Plaintiff to be segregated from other United States citizens and deprive him of privileges he would normally receive as other citizens by housing Plaintiff in CCA McRae C.I., an institution that is under contract to house illegal aliens. This was done without any notification from immigration. Furthermore, Plaintiff was deprived of due process in an immigration court to decide Plaintiff immigration status. There was no other sensible reason to be segregated from the rest of BOP population because the institution where Plaintiff was designated does not serve any purpose but to warehouse inmate based solely on their national origin and or being an alien.

21

1    83. Plaintiff went through administrative procedure, while at CCA CI, McRae Georgia in

2    addressing this injustice.  Plaintiff filed a grievance to Ms. Turner the BOP liaison on October

3    23, 2007. December 04, 2007 BOP Privatization Mgt. Branch received Plaintiff grievance and

4    stated he would have to go through the regular administrative procedure before submitting it

5    to them. Basically Plaintiff was just left to run in circles. On or around April 28, 2008, Plaintiff

6    received a grievance no. 008-2503-0034.

7

8    84. Plaintiff showed CCA CI proof of citizenship from USCIS to Carol Lavely Grievance officer.

9    She replied on April 10, 2008 and stated, "In accordance with BOP Policy, you have been

10    appropriately designated to this facility to serve your sentence."

11

12    85. BOP has a common practice of segregating inmates who are born in another country and

13    designating them to CCA CI McRae Georgia, without due process of an immigration court to

14    decide their immigration status which is a deprivation of 5th, 6th, 8th and 14th Amendment.

15

16    86. Defendant(s) blatant deprivation of due process and equal protection under the law caused

17    the risk of treating born United States citizens such as Plaintiff to unconstitutional treatment.

18    Plaintiff case only amplifies the deprivation of the constitutional rights by inmates held at that

19    facility. But the policy or this common practice by Mr. Harley Lappin, Mr. Alberto Gonzales

20    and other unidentified officials has caused subordinated to follow this unconstitutional process

21    to affect all inmates who have been house there, are currently housed there or in the process of

1    being housed there. Plus, there are other institutions other than CCA McRae that is also use to

2    abuse people constitutional rights.

3

4    87. The Director of Prisons Bureau Harley Lappin of the Bureau of Prison is responsible for the

5    practice of depriving inmates of their constitutional rights and segregating them based on

6    national origin along with others from senior management such as Alberto Gonzales. These

7    defendants come from senior management of government offices. It is in their job description

8    to know what is happening within the Bureau of Prison population on a major scale. Especially

9    when outsourcing inmates to private prisons. Only three government offices have the authority

10   to issue such changes in federal prison operations, and they all fall within the senior

11   management of the Justice Department : the office of Harley Lappin, the Director of Prisons

12   Bureau, the Office of Legal Counsel, or directly from the office of the US Attorney General,

13   Alberto Gonzales at the time.

14

15   88.  Title 42 Sec. 2000d. Prohibition against exclusion from participation in, denial of benefits

16   of, and discrimination under federally assisted programs on ground of race, color, or national

17   origin.  No person in the United States shall, on the ground of race, color, or national origin, be

18   excluded from participation in, be denied the benefits of, or be subjected to discrimination

19   under any program or activity receiving Federal financial assistance.

20

21   89. Unidentified employee of Bureau of Prisons sent Plaintiff to a private institution under

22   contract to house illegal aliens and denied him of programs that he would be illegible for being

1    a United States citizen. Their decision deprived Plaintiff of the constitutional law of due

2    process. They never could, or did produce any court order stating that Plaintiff was an illegal

3    alien. The defendant(s) also went against their own BOP Program Statement policy even if

4    Plaintiff could have been considered an illegal alien. The following is an excerpt from BOP

5    Program Statement 5100.08 Chapter 7 page 16:

6    21. **INSTITUTIONS WITH SPECIAL MISSIONS**

7    a. **FCI Oakdale**. The Bureau, ICE, and the Executive Office for

8    Immigration Review (EOIR) work closely together to meet the

9    requirements of the Immigration Reform and Control Act of 1986, by

10    ensuring the expeditious review of criminal aliens for deportation.

11    Beds are available for federally sentenced aliens, who are subject to

12    administrative proceedings under the Immigration and Naturalization

13    Act. Such inmates are transferred to FCI Oakdale for disposition of

14    their ICE detainer prior to completion of their federal sentence.

15    Mexican and Cuban nationals are not eligible for the Oakdale Criminal

16    Alien Program. The following procedures apply for the actual

17    selection and designation of inmates to the Oakdale Criminal Alien

18    Program.

19    (1) The ICE Officer in Charge at FCI Oakdale will monitor the inmate

20    male population via SENTRY to identify criminal aliens appropriate

21    for the program at FCI Oakdale. After they have been identified, ICE

22    staff will place a detainer on these individuals through the DSCC.

1  Each week DSCC staff will compile a list of the criminal aliens who
2  are to be released within the next year.

3  A courtesy list will be submitted, via GroupWise, to FCI Oakdale for
4  monitoring purposes.

5  (2) ICE staff at FCI Oakdale will forward to DSCC staff information
6  on alien inmates via GroupWise to assist in the movement of inmates
7  to FCI Oakdale at a later date. The movement of inmates to FCI
8  Oakdale will be authorized and coordinated by the DSCC. DSCC staff
9  will ensure CIM clearance is obtained and the Custody Classification
10 form reflects appropriate use of any Management Variable.

11 (3) Inmates will be redesignated no later than seven months from a
12 firm projected release date.

13

14 90. There is no other purpose for segregating inmates to these private prisons other than it is
15 to give opportunity to private prisons to be compensated with tax-payers money. Inmates at
16 these private facilities are not able to get an immigration court hearing until they have
17 completed their sentence at the private prison. Then they are transferred to an immigration
18 prison which is also another private prison to wait up to six months to get their immigration
19 issues addressed. In so doing BOP are wasting tax-payers money in order to fund private
20 institutions and subject inmates based on their national origin to cruel and unusual
21 punishment because they are doing more time than for what they were sentenced.

22

**Count 11: Depravation of Plaintiff Constitutional Rights caused Physical, Material And Mental Damages To Plaintiff And His Family.**

91. Without the jurisdiction element there was no other factual basis for the indictment or any warrant to be issued.

92. Plaintiff spent 49 months and 17 days in custody.

93. Plaintiff had to pay his  own way to get home after he was arrested and released on personal recognizance.

94. Plaintiff and his family were also required to expend $56,000.00 on attorney fees to represent him in defense of the criminal charges. Plus, Plaintiff lost his house, his belongings, time sensitive investment, employment and rupture of family relation. The whole ordeal has made Plaintiff develop high blood pressure and has affected Plaintiff nerves that in fact at sentence he was so consumed and overwhelmed by the stress that he past out in court with his blood pressure over 160.

95. Plaintiff was employed in Maryland at the time of his arrest and he had two young children, ages 1 and 7, that were depending on him for his support and affection.

1

2  96. The delay in bringing him to trial in a timely manner was not attributable to Plaintiff, but

3  rather to the District Attorney's Office for their utter indifference to him and his family by

4  superseding the indictment and materially broadening the indictment twice in an attempt to

5  force him to take a plea.

6

7  97. During the course of Plaintiff unlawful incarceration for 48 months, he was unable to see

8  his young children.

9

10  98. It is plaintiff concern that by putting this claim exposing the wrong doing of these

11  government employees in powerful position that his life could be placed in jeopardy. They have

12  already subjected him to harsh treatment and to hazardous situation by placing him in high

13  level prisons than what he should have been subjected. Judge Huvelle state at sentencing she

14  wanted to give Plaintiff more time, but because she did not give adequate notice she will go

15  with the top of the guideline which was already overboard.

16

17  99. David Sussman an attorney that was used just before he resigned himself from Plaintiff

18  case told him "blacks are treated different from whites in district court and that just the way it

19  is".

20

21  100. With these facts as a background, Plaintiff, pro se, does hereby complain and allege as

22  follows:

1

**FIRST CAUSE OF ACTION**

Deprivation Of Plaintiff's Constitutional Rights Under The Color Of The Federal Law

Malicious Prosecution and Wrongful Conviction

5

101. Plaintiff incorporates by reference and re-alleges each and every allegation stated in paragraphs 1 through 100.

8

102. The United States Constitution protects citizens from malicious prosecution by law enforcement officers when they do not exercise due care and act as individual vigilante.

11

103. The actions of Defendants in their individual capacity; Katherine A. Worthington as an individual, Jonathan Rosen as an individual, ELLEN SEGAL HUVELLE as an individual, KAREN LECRAFT HENDERSON as individual, MERRICK B. GARLAND as individual, JANICE ROGERS BROWN as individual, DAVID B. SENTELLE as an individual, DOUGLAS H. GINSBURG as an individual, ARTHUR RAYMOND RANDOLPH as an individual, JANICE ROGERS BROWN as an individual, DAVID S. TATEL as an individual, THOMAS B. GRIFFITH as an individual, BRETT M. KAVANAUGH as an individual, Bruce Johnson as an individual, and Brent Jackson as an individual.

1

2  104. Defendants' actions were motivated by bad faith, malice, and indifference to Plaintiff

3  Kharii Brodie and his family, including Plaintiffs Stephon and Brandon Brodie.

4

5  105. Plaintiff's prosecution resulted in his loss of liberty, given that he spent 49 months in

6  custody and had to endure costly criminal court proceedings.

7

8  106. This conduct on the part of defendants also represents a violation of 42 U.S.C. § 1983

9  given that their actions were undertaken under color of federal law.

10

11  107. As a direct and proximate result of the unconstitutional acts described above, Plaintiff has

12  been irreparably injured.

13

14  **SECOND CAUSE OF ACTION**

15  Deprivation of Constitutional Rights Under Color of Federal Law

16  The Application of Excessive Bail

17

18  108. Plaintiff incorporates by reference and re-alleges each and every allegation stated in

19  paragraphs 1 through 100.

20

21  109. The Eighth Amendment of the United States Constitution protects citizens from the

22  imposition of excessive or punitive bail by law enforcement officials and mandates that an

1   individual be provided with bail no higher than that necessary to assure his appearance at

2   court.

3

4   110. Upon information Plaintiff was denied bail by the United States District Court to file

5   motion of appeal.

6

7   111. The actions by Defendant Ellen Huvelle violated Plaintiff's right to be free from the

8   imposition of excessive bail as detailed in the Eighth Amendment to the United States

9   Constitution.

10

11   112. Defendant's actions were motivated by bad faith, malice, and an indifference to the rights

12   of Plaintiff.

13

14   113. This conduct on the part of Defendant Ellen Huvelle also represents a violation of 42

15   U.S.C. § 1983 given that their actions were undertaken under the color of federal law.

16

17   114. As a direct and proximate result of the unconstitutional acts described above, Plaintiff has

18   been irreparably injured.

19

20   **THIRD CAUSE OF ACTION**

21   Violation of Constitutional Rights under Color of Federal Law

22   False Arrest and Imprisonment

1

2   115. Plaintiff incorporates by reference and re-alleges each and every allegation stated in

3   paragraphs 1-100.

4

5   116. Based upon the misconduct of the Defendants, Plaintiff was arrested and illegally

6   imprisoned.

7

8   117. At no point was Plaintiff free to leave.

9

10   118. Defendant's actions were motivated by bad faith, malice, and an indifference to the rights

11   of Plaintiff.

12

13   119. This misconduct on the part of Defendant Ellen Huvelle, Katherine Worthington,

14   Jonathan Rosen, Bruce Johnson and Brent Jackson also represents a violation of 42 U.S.C. §

15   1983 given that their actions were undertaken under the color of federal law.

16

17   120. As a direct and proximate result of the unconstitutional acts described above, Plaintiff has

18   been irreparably injured.

19

20   **FOURTH CAUSE OF ACTION**

21   Deprivation of Constitutional Rights under Color of Federal Law

22   Wrongfully imprisoned.

1

2   121. Plaintiff incorporates by reference and re-alleges each and every allegation stated in

3   paragraphs 1-100.

4

5   122. Defendant's actions were motivated by bad faith, malice, and an indifference to the rights

6   of Plaintiff.

7

8   123. This misconduct on the part of Defendant(s) Ellen Huvelle, Katherine Worthington,

9   Jonathan Rosen, Bruce Johnson and Brent Jackson also represents a violation of 42 U.S.C. §

10   1983 given that their actions were undertaken under the color of federal law.

11

12   124. As a direct and proximate result of the unconstitutional acts described above, Plaintiff has

13   been irreparably injured.

14

15   **FIFTH CAUSE OF ACTION**

16   Deprivation of Constitutional Rights under Color of Federal Law

17   Denied appeal process.

18

19   125. Plaintiff incorporates by reference and re-alleges each and every allegation stated in

20   paragraphs 1-100.

1

2   126. Defendant's actions were motivated by bad faith, malice, and an indifference to the rights

3   of Plaintiff.

4

5   127. This misconduct on the part of Defendant KAREN LECRAFT HENDERSON as individual,

6   MERRICK B. GARLAND as individual, JANICE ROGERS BROWN as individual, DAVID B.

7   SENTELLE as an individual, DOUGLAS H. GINSBURG as an individual, ARTHUR RAYMOND

8   RANDOLPH as an individual, JANICE ROGERS BROWN as an individual, DAVID S. TATEL

9   as an individual, THOMAS B. GRIFFITH as an individual, BRETT M. KAVANAUGH as an

10  individual, also represents a violation of 42 U.S.C. § 1983 given that their actions were

11  undertaken under the color of federal law.

12

13  128. As a direct and proximate result of the unconstitutional acts described above, Plaintiff has

14  been irreparably injured.

15

16  **SIXTH CAUSE OF ACTION**

17  Deprivation of Constitutional Rights Under Color of Federal Law

18  Derivative Claim.

19

20  129. Plaintiffs incorporate by reference and re-allege each and every allegation stated in

21  paragraphs 1-100.

22

1    130. Plaintiffs Brodie children suffered the loss of companionship and services of their father

2    as a result of the misconduct of the Defendants.

3

4    **SEVENTH CAUSE OF ACTION**

5    Libel caused by Deprivation of Constitutional Rights under Color of Federal Law by

6    defendant(s). Compensatory claim.

7

8    131. Plaintiffs incorporate by reference and re-allege each and every allegation stated in

9    paragraphs 1-100.

10

11   132. Libel damages to Plaintiff caused by the actions of Defendants in their individual capacity;

12   Katherine A. Worthington as an individual, Jonathan Rosen as an individual, ELLEN SEGAL

13   HUVELLE as an individual, KAREN LECRAFT HENDERSON as individual, MERRICK B.

14   GARLAND as individual, JANICE ROGERS BROWN as individual, DAVID B. SENTELLE as

15   an individual, DOUGLAS H. GINSBURG as an individual, ARTHUR RAYMOND RANDOLPH

16   as an individual, JANICE ROGERS BROWN as an individual, DAVID S. TATEL as an

17   individual, THOMAS B. GRIFFITH as an individual, BRETT M. KAVANAUGH as an individual

18   in reference to First Amendment and 14th Amendment.

19

20   **EIGHTH CAUSE OF ACTION**

1   Libel caused by Deprivation of Constitutional Rights under Color of Federal Law by

2   defendant(s). Punitive claim.

3

4   133. Plaintiffs incorporate by reference and re-allege each and every allegation stated in

5   paragraphs 1-100.

6

7   134. Based upon the past misconduct an award of punitive damages is appropriate to punish

8   Defendants for its cruel and uncivilized conduct.

9

10   135. Libel damages to Plaintiff caused by the actions of Defendants in their individual capacity;

11   Katherine A. Worthington as an individual, Jonathan Rosen as an individual, ELLEN SEGAL

12   HUVELLE as an individual, KAREN LECRAFT HENDERSON as individual, MERRICK B.

13   GARLAND as individual, JANICE ROGERS BROWN as individual, DAVID B. SENTELLE as

14   an individual, DOUGLAS H. GINSBURG as an individual, ARTHUR RAYMOND RANDOLPH

15   as an individual, JANICE ROGERS BROWN as an individual, DAVID S. TATEL as an

16   individual, THOMAS B. GRIFFITH as an individual, BRETT M. KAVANAUGH as an individual

17   in reference to First Amendment and 14th Amendment.

18

19   **NINTH CAUSE OF ACTION**

20   Deprivation of Constitutional Rights under Color of Federal Law

1    Wrongful Segregated And Housed.

2

3    This represents a violation of 42 U.S.C. § 1983 given that their actions were undertaken under

4    the color of federal law.

5

6    136. Plaintiffs incorporate by reference and re-allege each and every allegation stated in

7    paragraphs 1-100.

8

9    137. This conduct on the part of Defendant(s) actions in their individual capacity; Harley

10   Lappin, Alberto Gonzales and JOHN DOE(s) an unidentified individual employee(s) of Bureau

11   of Prisons as an individual herein described were extreme and outrageous. Also represents a

12   violation of 42 U.S.C. § 1983 given that their actions were undertaken under the color of federal

13   law.

14

15   138. As a direct and proximate result of the unconstitutional acts described above, Plaintiff has

16   been irreparably injured.

17

18   **TENTH CAUSE OF ACTION**

19   Deprivation of Constitutional Rights under Color of Federal

1    Punitive Damage.

2

3    139. Plaintiff incorporates by reference and re-alleges each and every allegation stated in

4    paragraphs 1-100.

5

6    140. Based upon the past misconduct an award of punitive damages is appropriate to punish

7    Defendants for its cruel and uncivilized conduct.

8

9    141. The actions of Defendants in their individual capacity; Katherine A. Worthington as an

10   individual, Jonathan Rosen as an individual, ELLEN SEGAL HUVELLE as an individual,

11   KAREN LECRAFT HENDERSON as individual, MERRICK B. GARLAND as individual,

12   JANICE ROGERS BROWN as individual, DAVID B. SENTELLE as an individual,

13   DOUGLAS H. GINSBURG as an individual, ARTHUR RAYMOND RANDOLPH as an

14   individual, JANICE ROGERS BROWN as an individual, DAVID S. TATEL as an individual,

15   THOMAS B. GRIFFITH as an individual, BRETT M. KAVANAUGH as an individual,

16   Harley Lappin, Alberto Gonzales and JOHN DOE(s) an unidentified individual employee(s) of

17   Bureau of Prisons, Bruce Johnson as an individual, and Brent Jackson as an individual herein

18   described were extreme and outrageous.

**DEMAND FOR A TRIAL BY JURY**

142. The Plaintiffs hereby demand a trial by jury.

**JUDICIAL NOTICE**

143. All officers of the court for United States Federal District Court, Washington D.C are hereby placed on notice under authority of the supremacy and equal protection clauses of the United States Constitution and the common law authorities of Haines v Kerner, 404 U.S. 519, Platsky v. C.I.A. 953 F.2d. 25, and Anastasoff v. United States, 223 F.3d 898 (8th Cir. 2000) relying on Willy v. Coastal Corp., 503 U.S. 131, 135 (1992), "United States v. International Business Machines Corp., 517 U.S. 843, 856 (1996), quoting Payne v. Tennessee, 501 U.S. 808, 842 (1991) (Souter, J., concurring). Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F. Supp. 647, American Red Cross v. Community Blood Center of the Ozarks, 257 F.3d 859 (8th Cir. 07/25/2001). In re Haines: pro se litigants (Defendant is a pro se litigant) are held to less stringent pleading standards than BAR registered attorneys. Regardless of the deficiencies in their pleadings, pro se litigants are entitled to the opportunity to submit evidence in support of their claims. In re Platsky: court errs if court dismisses the pro se litigant (Defendant is a pro se litigant) without instruction of how pleadings are deficient and how to repair pleadings. In re Anastasoff: litigants' constitutional rights are violated when courts depart from precedent where parties are similarly situated. All litigants have a constitutional right to have their claims adjudicated according the rule of precedent. See Anastasoff v. United States, 223 F.3d 898 (8th Cir. 2000). Statements of counsel, in their briefs or their arguments are not sufficient for a

1   motion to dismiss or for summary judgment, Trinsey v. Pagliaro, D.C. Pa. 1964, 229 F. Supp.

2   647.

## **Exhibit List of Supporting Documents**

4   Exhibit "A" – General Affidavit of Plaintiff

5   Exhibit "B" – letter of engagement from Brent Jackson

6   Exhibit "C" -  Defective Indictment Argument

7   Exhibit "D" – Letter to Steven Tabackman

8   Government Exhibit – No. MISC-FDIC-547

9   Government Exhibit – No. MISC-FDIC-552

10  Government Exhibit – No. MISC-FDIC-557

11  Exhibit App. 01 FDIC

12  Exhibit App. 04B, 05B, 06B, 07B, 08B, 09B, 010B, 011B, 012B, 013, – Esther Harper

13  appraisals that show the lender she did appraisal.

14  Exhibit App. 014 appraisal that show the lender that it was intended and Esther Harper is not

15  the appraiser.

16  Exhibit App. 1, App. 2, App. 3, App. 4, App. 5, App. 6, App. 7, App.8, App. 9, App. 10, App. 11,

17  App. 12 loan applications that state the lender knowingly involved.

18  Exhibit – Government Exhibit list that shows the omission of important evidence.

1   Indictment date stamped Aug 12, 2004

2   Judgment date stamped Aug 10, 2005

3   Exhibit BOP 1, 2 and 3.

4   Government Exhibit No. MISC-Plea-Kareem-826. He was the loan officer for Plaintiff that is

5   stated in the overt act of the wire fraud counts. His Plea agreement vindicates Plaintiff.

6   Court order date stamped SEP 19 2008.

7   Exhibit 9100 – Document withheld or misplaced by prosecution that they got from IRS

8   showing Plaintiff as an employee of the ICN Corporation.

9

10   **PRAYER FOR RELIEF**

11

12   WHEREFORE, the Plaintiffs request that this Honorable Court grant them the following relief:

13

14   A. Award compensatory damages to Plaintiff Kharii Brodie against the defendants on the First

15   Cause of Action, jointly and severally in the amount of $25,000,000.00;

16

17   B. Award compensatory damages to Plaintiff Kharii Brodie against the defendants on the

18   Second Cause of Action, jointly and severally in the amount of $25,000,000.00;

19

1   C. Award compensatory damages to Plaintiff Kharii Brodie against the defendants on the Third

2   Cause of Action, jointly and severally in the amount of $25,000,000.00;

3

4   D. Award compensatory damages to Plaintiff Kharii Brodie against the defendants on the

5   Fourth Cause of Action, jointly and severally in the amount of $25,000,000.00;

6

7   E. Award injunctive relief by a writ mandamus to make a decision on the defective indictment

8   argument that was filed into docket twice as documented in this claim and compensatory

9   damages to Plaintiff Kharii Brodie against the defendants on the Fifth Cause of Action, jointly

10  and severally in the amount of $25,000,000.00;

11

12  F. Award compensatory damages to Plaintiff Brodie, and the infant plaintiffs Stephon and

13  Brandon Brodie against the defendants on the Sixth Cause of Action, jointly and severally in

14  the amount of $25,000,000.00;

15

16  G. Award compensatory damages to Plaintiff Brodie in the Seventh Cause of Action, jointly and

17  severally in the amount of $40,000,000.00;

18

19  H. Award compensatory damages to Plaintiff Brodie in the Eighth Cause of Action, jointly and

20  severally in the amount of $25,000,000.00;

21

1  I. Award punitive damages to Plaintiff Brodie in the Ninth Cause of Action, jointly and

2  severally in the amount of $40,000,000.00;

3

4  J. Award punitive damages in the Tenth Cause of Action, jointly and severally in the amount of

5  $40,000,000.00;

6

7  K. A monetary award costs of this action and for attorney's fees in event of trial, pursuant to 42

8  U.S.C. § 1988;

9

10  L. Such other and further relief as this Court deems just and proper.

11

12  Respectfully Submitted,

13

14  _____

15  Kharii W. Brodie

16  Pro se Plaintiff

17

18  1801 Staley Manor Drive,

19  Silver Spring, MD. 20904.

20  Phone: 301-622-2505

1

2   Dated: September 23, 2009.

3   Silver Spring, MD.

4   Cc: Clerk of Court - 1 original signed and 2 copies

5
6   The United States Attorney General – 1 copy complaint and signed/sealed summons
7   950 Pennsylvania Avenue, N.W. Washington, D.C. 20530
8
9   The United States Attorney for the District of Columbia – 1 copy complaint and signed/sealed
10  summons
11  Civil Process Clerk, United States Attorney's Office
12  555 Fourth Street, N.W. Washington, D.C. 20530
13
14  KATHERINE WORTHINGTON as an individual, - 1 copy complaint and signed/sealed
15  summons
16  555 Fourth Street N.W., Washington, D.C. 20530
17
18  JONATHAN ROSEN as an individual -1 copy complaint and signed/sealed summons
19  555 Fourth Street N.W. Washington, D.C. 20530
20
21  ELLEN SEGAL HUVELLE as an individual, - 1 copy complaint and signed/sealed
22  333 Constitution Avenue N.W. Washington, D. C. 20001
23
24  KAREN LECRAFT HENDERSON as individual, - 1 copy complaint and signed/sealed
25   333 Constitution Avenue N.W. Washington, D. C. 20001
26
27  MERRICK B. GARLAND as individual - 1 copy complaint and signed/sealed
28  333 Constitution Avenue N.W. Washington, D. C. 20001
29
30  JANICE ROGERS BROWN as individual - 1 copy complaint and signed/sealed
31  333 Constitution Avenue N.W. Washington, D. C. 20001
32
33  DAVID B. SENTELLE as an individual, - 1 copy complaint and signed/sealed
34   333 Constitution Avenue N.W. Washington, D. C. 20001
35
36  DOUGLAS H. GINSBURG as an individual, - 1 copy complaint and signed/sealed
37   333 Constitution Avenue N.W. Washington, D. C. 20001
38
39  ARTHUR RAYMOND RANDOLPH as an individual, - 1 copy complaint and signed/sealed
40  333 Constitution Avenue N.W. Washington, D. C. 20001
41
42  DAVID S. TATEL as an individual, - 1 copy complaint and signed/sealed

1   333 Constitution Avenue N.W. Washington, D. C. 20001

2

3   THOMAS B. GRIFFITH as an individual, - 1 copy complaint and signed/sealed

4   333 Constitution Avenue N.W. Washington, D. C. 20001

5

6   BRETT M. KAVANAUGH as an individual, - 1 copy complaint and signed/sealed

7    333 Constitution Avenue N.W. Washington, D. C. 20001

8

9

10   ALBERTO GONZALES as an individual, - 1 copy complaint and signed/sealed

11   950 Pennsylvania Avenue N.W. Washington, DC 20530

12

13   HARLEY LAPPIN as an individual, - 1 copy complaint and signed/sealed

14   320 First Street, N.W., Washington, DC 20534

15   HARLEY G. LAPPIN, 3102 ERVIN CT., ANNAPOLIS, Anne Arundel County, MD 21403-4649

16

17   JOHN DOE(s) as an unidentified individual employee(s) of Bureau of Prisons, - 1 copy

18   complaint and signed/sealed

19   320 First Street, NW., Washington, DC 20534

20

21

22   BRUCE JOHNSON as an individual, - 1 copy complaint and signed/sealed

23   4301 Northview Drive, Bowie MD 20716

24

25   BRENT JACKSON as an individual. - 1 copy complaint and signed/sealed

26   406 West Franklin Street, Second Floor. Richmond Virginia 23220

27

28