**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

<table>
<tr>
<td>

**KHARII W. BRODIE, individually and as parent and natural guardian of B.B. and S.B.,**

**Plaintiff,**

**v.**

**KATHERINE WORTHINGTON, et al.,**

**Defendants.**

</td>
<td>

**FINAL ORDER OF DISMISSAL**

**Civil Action 09-1828  (BJR)**

</td>
</tr>
</table>

**MEMORANDUM OPINION**

Plaintiff Kharii W. Brodie brings this action against the judges, prosecutors, and defense attorneys involved in the criminal case that led to his conviction for wire fraud and conspiracy to make false statements to financial institutions to obtain mortgage loans, as well as federal officials involved in his subsequent imprisonment.  Many motions by Brodie are before the Court.  Brodie moves for reconsideration of the orders dismissing his claims against several defendants [Dkt. ## 106, 112, 113] and for leave to file an amended complaint [Dkt. # 90].  Brodie also requests a default judgment against Jonathan Rosen, a former federal prosecutor who has not responded to the complaint [Dkt. # 114] and for reconsideration of an order denying a motion to strike [Dkt. # 120].  Upon consideration of the motions, the oppositions thereto, and the entire record of the case, the Court concludes that Brodie's motions must be denied and his claims against Jonathan Rosen dismissed.  His entire case is therefore dismissed.

## I. BACKGROUND

In 2005 a jury convicted Kharii W. Brodie[1] of one count of conspiracy to make false statements to financial institutions to obtain mortgage loans in violation of 18 U.S.C. § 371 and three counts of wire fraud in violation of 18 U.S.C. § 1343.  *United States v. Brodie*, 524 F.3d 259, 261, 265 (D.C. Cir. 2008).  Brodie was sentenced to 57 months' imprisonment and ordered to pay restitution.  *Id.* at 266.  His conviction and sentence were upheld upon appeal.  *Id.* at 274. Brodie's motion for post-conviction relief under 28 U.S.C. § 2255 was denied.  *See Brodie v. United States*, 626 F. Supp. 2d 120 (D.D.C. 2009).

Brodie then brought this suit for damages, repeating many of the allegations that were rejected in his appeal and section 2255 action.[2]  Brodie asserts that his indictment and arrest were procedurally flawed, that his prosecutors committed misconduct and his lawyers malpractice, that the judges at his trial and on appeal acted corruptly, and that the Federal Bureau of Prisons held him at a facility generally reserved for non-citizens.  All defendants except Jonathan Rosen moved to dismiss the complaint, and the Honorable Henry H. Kennedy, Jr. granted each motion. Brodie now moves for reconsideration of those dismissals and for leave to amend his complaint. The Court also addresses the status of Brodie's claims against Rosen.

---

[1] He was convicted under the name of Wilbert S. Brodie.  *See United States v. Brodie*, 524 F.3d 259 (D.C. Cir. 2008).

[2] Although Brodie's complaint describes his claims as being brought under 42 U.S.C. § 1983, none of the defendants are state actors and many are federal officials susceptible to suit under *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971).  The analysis of claims and immunities under *Bivens* and section 1983 are identical for all purposes relevant to this suit.  *See Williams v. Hill*, 74 F.3d 1339, 1340 (D.C. Cir. 1996) (per curiam); *Doe v. District of Columbia*, 697 F.2d 1115, 1123 (D.C. Cir. 1983); *Butz v. Economou*, 438 U.S. 478, 504 (1978).

## II. ANALYSIS

### A. Motions for Reconsideration

Although "[m]otions for reconsideration are not specifically provided for under the Federal Rules of Civil Procedure," *United Mine Workers of Am. 1974 Pension Trust v. Pittston Co.*, 793 F. Supp. 339, 344 (D.D.C. 1992), *aff'd* 984 F.2d 469 (D.C. Cir. 1993), "[i]nterlocutory orders . . . may always be reconsidered prior to final judgment."[3] *Langevine v. District of Columbia*, 106 F.3d 1018, 1023 (D.C. Cir. 1997); *see also Schoen v. Washington Post*, 246 F.2d 670, 673 (D.C. Cir. 1957) (Burger, J.) ("[W]here the interests of justice require it, [a trial] court has plenary powers to set aside or otherwise modify its interlocutory orders at any time before final judgment."); *Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 42, 48 n.6 (D.D.C. 2001) ("[I]nterlocutory judgments are not brought within the restrictions of [Rule 60(b)], but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires.") (quoting FED. R. CIV. P. 60(b) Advisory Comm. Notes (1946)). "So long as the court has jurisdiction over an action, it should have complete power over interlocutory orders made therein and should be able to revise them when it is consonant with equity to do so." *Schoen*, 246 F.2d at 673 (emphasis, internal quotation marks and internal brackets omitted); *accord Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge.") (citing FED. R. CIV. P. 54(b)). "This is true even when a case is reassigned to a new judge." *Langevine*, 106 F.3d at 1023 (citing *In re Agent Orange Prod. Liab. Litig.*, 733 F.2d

---

[3] Interlocutory orders are those which are "interim or temporary; not constituting a final resolution of the whole controversy." BLACK'S LAW DICTIONARY 889 (9th ed. 2009).

10, 13 (2d Cir. 1984) ("It is well established that the interlocutory orders and rulings made by a district judge are subject to modification by the district judge at any time prior to final judgment, and may be modified to the same extent if the case is reassigned to another judge.")).  This Court has the power to reconsider any order that has been issued in this case; it will exercise that power if justice so requires.  The Court proceeds to consider whether any of Judge Kennedy's orders dismissing the claims against certain defendants should be set aside or otherwise modified.

### i. Judicial Defendants

Judge Kennedy dismissed Brodie's claims against the judicial defendants[4] on the grounds that they had not been properly served and, even if properly served, were entitled to absolute immunity.  *See* Order of August 31, 2011 [Dkt. # 105].  Moving for reconsideration of that dismissal, Brodie argues that he should have been given an opportunity to cure his defective service of process, and that the judicial defendants are not entitled to absolute immunity because—the Court understands him to argue—they were either defrauded by the federal prosecutors or else erred so gravely as to forfeit the benefit of their immunity.  Because the judicial defendants are clearly entitled to absolute immunity from this suit, the Court does not reach Brodie's argument as to service of process.

"Judges enjoy absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless these actions are taken in the complete absence of

---

[4] The complaint names Chief Circuit Judge David B. Sentelle, Circuit Judges Douglas H. Ginsburg, A. Raymond Randolph, Karen LeCraft Henderson, David S. Tatel, Merrick B. Garland, Janice Rogers Brown, Thomas B. Griffith, and Brett M. Kavanaugh, and District Judge Ellen Segal Huvelle.

all jurisdiction." *Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C. Cir. 1993) (per curiam).[5]  This

absolute immunity "is not overcome by allegations of bad faith or malice, the existence of which

ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles v.*

*Waco*, 502 U.S. 9, 11 (1991) (per curiam); *see also Pierson v. Ray*, 386 U.S. 547, 554 (1967)

(noting that "immunity applies even when the judge is accused of acting maliciously and

corruptly").  Because all of Brodie's allegations relate to the judges' actions in their judicial

capacities—and because even if there had been a technical flaw in Brodie's indictment, as he

alleges, the ensuing prosecution would not have occurred "in the complete absence of all

jurisdiction," *see, e.g.*, *King v. Myers*, 973 F.2d 354, 356–58 (4th Cir. 1992)—the Court declines

to modify the order dismissing all claims for money damages against the judicial defendants.

### ii. Katherine Worthington

Judge Kennedy dismissed Brodie's claims against Assistant United States Attorney

Katherine Worthington on the grounds that Brodie failed to properly serve her, and that she was

entitled to prosecutorial immunity.  *See* Order of August 31, 2011 [Dkt. # 104].  Moving for

reconsideration of that dismissal, Brodie argues that he should have been given an opportunity to

cure his defective service of process.  He also argues that Worthington was not entitled to

prosecutorial immunity for her conduct in seeking an indictment against Brodie, and, in the

---

[5] To the extent that Brodie requests injunctive relief in the form of a writ of mandamus requiring the judicial defendants to consider an argument that his indictment was procedurally deficient, the Court construes it is as a second or successive action under section 2255 and denies it because it has not been certified by the Court of Appeals for the District of Columbia Circuit to contain either newly discovered evidence or a new rule of constitutional law.  *See* 28 U.S.C. § 2255(h).

alternative, that she committed fraud upon the court and in doing so deprived herself of immunity from suit.

The Court first considers Judge Kennedy's ruling that Katherine Worthington is entitled to absolute immunity from suit. Brodie objects to Worthington's conduct during the grand jury proceedings that led to his indictment, and argues that prosecutors are not entitled to absolute immunity from suit for the actions taken in such proceedings. He is wrong. *See Malley v. Briggs*, 475 U.S. 335, 341–43 (1986) (noting that a prosecutor who asks a grand jury to indict a suspect is entitled to absolute immunity from suit for that act); *Imbler*, 424 U.S. at 422–23 (same) (citing *Yaselli v. Goff*, 12 F.2d 396, 399–404 (2d Cir. 1926), *aff'd* 275 U.S. 503 (1927) (per curiam)); *accord Buckley*, 509 U.S. at 273 ("We have not retreated . . . from the principle that acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings . . . and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation . . . before a grand jury after a decision to seek an indictment has been made."); *Moore v. Valder*, 65 F.3d 189, 194 (D.C. Cir. 1995) (holding that "prosecutorial immunity protects [a prosecutor] from liability for allegedly concealing exculpatory evidence from the grand jury and for allegedly manipulating evidence before the grand jury to create a false impression"). Nor does an allegation of "fraud upon the court" defeat prosecutorial immunity. *Gray v. Poole*, 243 F.3d 572, 575 (D.C. Cir. 2001) ("Where absolute immunity is deemed appropriate, an official is protected from all suits attacking conduct within the scope of the immunity, even if the official is alleged to have acted in bad faith.") (citing *Moore*, 65 F.3d at 194). Because all of Brodie's allegations against

Worthington relate to her conduct as an advocate for the state, for which she is entitled to absolute immunity, the Court declines to modify the order dismissing all claims against her.

### iii.  Alberto Gonzales and Harley Lappin

Judge Kennedy dismissed Brodie's claims against former United States Attorney General Alberto Gonzales and former Bureau of Prisons Director Harley Lappin on the grounds that Brodie failed to properly serve those defendants, who were in any case entitled to qualified immunity.  Judge Kennedy also ruled that Gonzales, like Worthington, was entitled to prosecutorial immunity.  *See* Order of August 31, 2011 [Dkt. # 104].  Moving for reconsideration of that dismissal, Brodie argues that he should have been given an opportunity to cure his defective service of process.  He further argues that Gonzales is not entitled to absolute immunity in his role overseeing the Federal Bureau of Prisons, and that neither Gonzales nor Lappin should enjoy qualified immunity because they violated Brodie's clearly established constitutional rights.  The Court begins—and ends—its inquiry with an analysis of qualified immunity.

Qualified immunity "protects government officials in civil litigation arising from their official conduct 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Navab-Safavi v. Glassman*, 637 F.3d 311, 317 (D.C. Cir. 2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Because "the function of qualified immunity [is to] protect[] government officials against not only civil liability, but the burden of litigation," *Navab-Safavi*, 637 F.3d at 318, in order to avoid the dismissal of his claims against Gonzales and Lappin, Brodie must identify a clearly established statutory or constitutional right and plausibly allege that they violated it.  A

general allegation that such a right was violated will not suffice.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Brodie alleges that Gonzales and Lappin violated his constitutional rights by confining him in a facility that, he says, was under contract to house non-citizens (Brodie alleges that he is a citizen) and depriving him of benefits that incarcerated citizens generally receive.  Brodie cites the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution as sources of clearly established constitutional rights.  He also cites 42 U.S.C. § 2000d, which prohibits discrimination on the basis of race, color, or national origin in programs receiving federal financial assistance, as a source of clearly established statutory rights.  But even if Brodie is (as he claims) a United States citizen and was (as he claims) housed in a facility usually reserved for non-citizens, he had no clearly established right to be housed elsewhere, nor any right to the benefit of particular programs while incarcerated.  *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) ("Congress has given federal prison officials full discretion to control the[] conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process.")  Because none of Brodie's allegations against Gonzales and Lappin can overcome their qualified immunity from suit, the Court declines to modify the order dismissing all claims against them.

### iv. Bruce A. Johnson, Jr.

Judge Kennedy dismissed Brodie's claims against Bruce A. Johnson, Jr., a private lawyer who defended Brodie in his criminal trial, on the grounds that Johnson was neither a federal officer nor a state actor and therefore not amenable to suit under *Bivens* or section 1983.  *See* Order of September 21, 2011 [Dkt. # 109].  This ruling was correct.  *See, e.g.*, *McCord v. Bailey*,

636 F.2d 606, 613 (D.C. Cir. 1980) ("Lawyers may be officers of the court, but they are not officers of the state within the meaning of section 1983. In their capacities as representatives of a client in court, private counsel do not act under color of state law.") (internal citations and quotation marks omitted). Judge Kennedy also noted that Brodie did not plead diversity jurisdiction for any state law claims of legal malpractice that he may have asserted, and that claims of legal malpractice do not, of themselves, raise a federal question. This ruling was also correct. *See Steele v. Salb*, 681 F. Supp. 2d 34, 37 (D.D.C. 2010). Judge Kennedy further declined to exercise supplemental jurisdiction over Brodie's malpractice claims. Because Brodie has failed to state a *Bivens* or section 1983 claim upon which relief can be granted against Johnson and failed to establish this Court's jurisdiction over any other claim, the Court declines to modify the order dismissing all claims against Johnson.

### B. Claims Against Jonathan Rosen

Jonathan Rosen, who has not appeared in this suit, was an Assistant United States Attorney who participated in Brodie's prosecution. Brodie asks that a default judgment be entered against him. Instead, the Court will dismiss all claims against Rosen for the same reasons that it declines to modify the order dismissing all claims against Worthington. *See supra* at 5–7. First, Rosen is not in default because Brodie has not effected proper service. Brodie addressed a copy of the summons and complaint to Rosen in care of the civil process clerk at the United States Attorney's Office, but he has not offered any evidence that the civil process clerk was authorized to receive personal service on Rosen's behalf. *See Schwarz v. Thomas*, 222 F.2d 305, 308 (D.C. Cir. 1955) ("The rule is clear that . . . any agent who accepts service must be shown to have been authorized to bind his principal by the acceptance of process . . . .").

Moreover, Rosen is entitled to absolute immunity from suit for his role in Brodie's prosecution. The Court's reasoning above pertaining to Worthington is applicable to Rosen.

### C. Motion For Leave to File Second Amended Complaint

Brodie requests leave to amend his complaint again to allege that defendants were engaged in a conspiracy to deprive him of his civil rights in violation of 42 U.S.C. § 1985. Brodie alleges two conspiracies, one involving the judicial proceedings leading to his indictment and conviction, and the other between Gonzales and Lappin to incarcerate him in a particular facility as described above.  Under Federal Rule of Civil Procedure 15, a party must obtain either "the opposing party's written consent or the court's leave" to amend a pleading a second time. FED. R. CIV. P. 15(a)(2).  "The decision to grant or deny leave to amend . . . is vested in the sound discretion of the trial court," *Doe v. McMillan*, 566 F.2d 713, 720 (D.C. Cir. 1977), which should "determine the propriety of amendment on a case by case basis, using a generous standard."  *Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 344 (D.C. Cir. 1997). Leave to amend will not be granted when amendment would be futile.  *See, e.g.*, *Richardson v. United States*, 193 F.3d 545, 548–49 (D.C. Cir. 1999) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  A futile amendment is commonly said to be one that could not withstand a motion to dismiss.  *See, e.g.*, *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).

The defendants argue that Brodie's proffered amendment would be futile.  They are correct.  Brodie's new claims of a conspiracy in violation of 42 U.S.C. § 1985 between the prosecutors, judges and defense lawyers are subject to the same defenses of immunity as his claims brought under section 1983 (and construed as *Bivens* claims).  Moreover, plaintiff's convictions have survived an appeal and a section 2255 action.  "[B]ecause [plaintiff's]

10

convictions have not been reversed, expunged, or declared invalid, his claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994)." *Simmons v. Beshouri*, 200 Fed. Appx. 3, 4 (D.C. Cir. 2006) (dismissing claims under 42 U.S.C. §§ 1983 and 1985); *see also Williams v. Hill*, 74 F.3d 1339, 1340 (D.C. Cir. 1996) (per curiam) (applying *Heck* to *Bivens* actions).   Under *Heck*, a "cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." 512 U.S. at 490.  Brodie's conviction and sentence both stand, and therefore he has no section 1985 cause of action against his judges, prosecutors, or defense attorneys.[6]  Brodie's claims of a conspiracy between Gonzales and Lappin to deny Brodie his civil rights by confining him in an inappropriate facility are futile because, as discussed above, he has no right not to be housed in any particular facility.

### III. CONCLUSION

For the reasons discussed above, Brodie's motions for reconsideration, for a default judgment, and for leave to amend his complaint are **DENIED** and his case **DISMISSED** in its entirety this 24th day of January 2012.  An appropriate judgment accompanies this opinion.

Barbara Jacobs Rothstein
United States District Judge

---

[6] To the extent that Brodie would amend his complaint to assert claims under 42 U.S.C. § 1981, those claims would be futile for all of the reasons applicable to his claims under section 1985.